DAVIDSON *against* MURPHY :

IN ERROR.

</div>

A record, in judicial proceedings, is a precise history of the suit from its commencement to its termination, including the conclusion of law thereon, drawn up by the proper officer, for the purpose of perpetuating the exact state of facts.

Where the plaintiff in an action of debt on judgment, offered in evidence a writ and declaration returnable to a justice of the peace, with regular service endorsed thereon ; the following minutes in the hand-writing of the justice, *viz.* " Court fees paid. Plea, general issue, *non-assumpsit*—and issue. Continued 26th *September*, 1836. Damages, $5.75. Court, 50 cts. Attendance, 1.00." [and other items of a bill of costs, amounting to $4.23.] and an execution counting on a judgment between the parties to the writ, recovered before the same justice, for the same sums of debt and costs, and signed by the justice, with a return of *non est inventus* thereon ; and it appeared that the justice died in *July*, 1837 ; it was held, 1. that these writings did not constitute or shew a record of a judgment rendered ; 2. that there being no proof of a record once existing and lost, these writings were not a legal substitute for such proof ; and consequently, they were inadmissible.

THIS was an action of debt on judgment, brought originally before a justice of the peace, and appealed to the county court. The declaration alleged, That by the consideration of a justice court, holden at *New-Haven*, on the 26th of *September*, 1836, by *Joseph Bennett*, Esq. then and ever afterwards until his death, a justice of the peace for *New-Haven* county, the plaintiff recovered judgment against the defendant, for the sum of 5 dollars, 75 cents, debt, and for the sum of 4 dollars, 23 cents, costs of suit, as by the files and execution of said justice court now ready in court to be shewn, will fully appear ; the record of said justice being lost and is not to be

New-Haven, found.    The defendant pleaded *Nul tiel record;* upon which
July, 1839.
—————— issue was joined.

Davidson
*v.*
Murphy.

On the trial before the county court, the plaintiff, to prove the record and judgment alleged in the declaration, offered in evidence the following documents, *viz.* 1. The writ in favour of *Isaac Davidson* against *John Murphy,* dated *New-Haven, September* 14th, 1836, duly signed and returnable to *Joseph Bennett,* Esq. justice of the peace, on the 21st of *September,* 1836, at 2 o'clock *P. M.;* 2. The declaration, containing two counts in general *indebitatus assumpsit,* and one count on an account stated; 3. regular service, by a proper officer, endorsed on the writ; 4. minutes in the hand-writing of said *Bennett*—" Court fees paid by *Robert Osborn.* Plea, general issue, *non assumpsit,* and issue.    Continued, 26th *September,* 1836.    Damages                                    $5.75

| | | |
|---|---|---|
| Court | .50 | |
| Writ | 2.00 | |
| Subpœna | .25 | |
| Service of subpœna | .14 | |
| 4 Attendance | 1.00 | |
| 1 Witness | .34 | |
| | —— | 4.23 |
| | 4.23 | —— |
| | | 9.98 |

5. An execution, in the usual form, counting on a judgment in favour of *Isaac Davidson* against *John Murphy,* recovered before *Joseph Bennett,* Esq., justice of the peace, on the 26th of *September,* 1836, for 5 dollars, 75 cents, debt, and 4 dollars, 23 cents, costs, and dated *October* 15th, 1836; [signed in his hand-writing] *Joseph Bennett,* Justice of the Peace." 6. A return of *non est inventus* on the execution.

It was admitted, that said *Bennett* died on the 1st of *July,* 1837, and before the commencement of this suit.

The defendent objected to the admission of this evidence; and the court excluded it, and thereupon rendered judgment for the defendant.    On a writ of error in the superior court, that judgment was affirmed.    By motion in error, the record was then brought before this court for revision.

*Mix,* for the plaintiff in error, remarked, That as the minutes of the justice and the execution proved, beyond a doubt, to every unshackled mind, a judgment rendered, and the pre-

cise amount of that judgment, the plaintiff, in equity and justice, ought to have the benefit of the fact, unless clearly deprived of it, by some stubborn rule of law, which the court is implicitly bound to obey. The plaintiff has been deprived of a formal judgment, by the death of the magistrate, and by that alone; but it is a well established maxim of law, that "*actus Dei nemini facit injuriam*." Were the justice alive, he might, according to the practice in this state, come in and amend this record. "As justices of the peace (says Judge *Swift,*) often enter up their judgments in a very imperfect manner, they have been permitted to come into court and amend them, where they had any minutes by which to amend." 1 *Sw. Dig.* 792. That here are sufficient minutes to amend by, and make a full and formal record, will hardly be denied. It has been decided, by the supreme court of *Vermont,* that where a justice has died without making a formal record, minutes of a judgment rendered by him on the writ, if they shew a judgment rendered and the amount, are evidence of the judgment. *Story* v. *Kimball,* 6 *Verm. Rep.* 541. This decision is as applicable in *Connecticut* as in *Vermont.* The case before the court is quite as strong as that. Here are minutes on the writ, shewing the amount of debt and costs, rendered upon an issue formed, and a trial. Here is also an execution, stating, specifically, the amount recovered, when and where, corresponding with the writ, signed by the deceased justice, and coming from his office, as part of the files in the cause. An execution returned is as much a part of the files as the original writ; and the entries made by the justice thereon should have as much effect as those made by him on the writ. An execution returned and on file, is, indeed, a matter of record. *Brier* v. *Woodbury* & al. 1 *Pick.* 368.

But this case is stronger than the *Vermont* case; for this execution on file contains distinctly and emphatically, though more briefly, all that a formal record would. It says, a precise sum of debt and of costs, was recovered, on a judgment rendered in that suit; and if we recur to the files, we see an issue formed, which gives us all the parts of a complete record. It amounts to more than minutes on file.

What rule of practice has been adopted by this court directing how much shall be necessary to make a record? Our statutes are silent on this point: they have prescribed no form

*New-Haven,*
*July, 1839.*

*Davidson*
*v.*
*Murphy.*

or details.    We deny, then, that there is any authority, or any stubborn rule, for this court, requiring more than enough to shew substantially, as in this case, a judgment rendered and the amount ; (*Miles v. Gilbert,—New-Haven* county, 1838, *coram Huntington,* J.) although it is common, in this state, to have something more of form in shewing it than there is here. And who is to be injured, if this evidence is received ?    Certainly not the defendant ; for the fact is undoubtedly as the offered evidence purports.    It is righteous that the plaintiff should have the benefit of the fact.    There is no general rule to be violated ; and if there were, being a mere matter of practice, it is not of much consequence.    And besides, a court ought, if possible, to make all rules, and even statutes, subserve the ends of justice and equity.

*R. S. Hinman,* for the defendant, contended, 1. That a justice's court in *Connecticut,* is a court of record.    If not, the county court clearly did right in rejecting the papers offered ; for they were irrelevant to the issue.

2. That the papers in question were not a record ; and therefore, were not evidence.    Here is no entry that any judgment was rendered : indeed, nothing is said about a judgment. No issue is found.    *Wales,* admr. v. *Smith,* superior court, *New-Haven* county, *August* term, 1825, *coram Hosmer,* Ch.J. (*a*)

(*a*) This was an action of ejectment ; to which the general issue was pleaded.    On the trial, the plaintiff, to support his declaration, offered in evidence a writ and declaration in his, the plaintiff's favour, against *Abel Smith,* dated the 3d of *October,* 1823, and duly served, returnable and returned to *Charles Denison,* Esq., a justice of the peace, then in life but since deceased, on the 14th of *October,* 1823, demanding 35 dollars, damages.    The plaintiff also offered in evidence the following minutes, made by justice *Denison,* while in life, upon said writ and declaration, *viz.* " Defaulted—Writ, &c. 1.50 ; service, 1.30 ; attendance, 25 ;—3.30    Debt 34.41.—37.71.    Execution granted same day ;" such evidence being offered to prove the record of a judgment in said suit, no other evidence thereof ever existing.    To the admission of such evidence the defendant objected ; insisting, that these minutes were not a record, but were made only for the use of the justice ; and that a judgment rendered in said suit could alone be proved, by a record made by the justice, in the accustomed manner.    The court being of this opinion rejected the evidence offered.    The defendant had a verdict, of course ; and the plaintiff moved for a new trial. Ch. J. HOSMER declined reserving the motion, remarking as follows : " It must not be assumed, that the judge reserves a motion for advice, merely because it is requested ; he reserves it for his own sake, and because he thinks the matter so questionable that it ought to be reviewed, by all the judges.    If there is no question, in the opinion of the judge, by reason of the perfect clearness and certainty of the point decided, it would be a denial of justice to procrastinate the cause, and authorize useless litigation ; for every groundless delay of justice is a denial of justice.
" The *memorandum* offered in evidence was no record.    A record of court is a memorial of a court of justice, and of such unquestionable verity that it may

The minutes say, " Continued *September* 26, 1836." There could have been no judgment *that* day; and there is no intimation of a judgment rendered afterwards.

*New-Haven,*
*July, 1839.*
_____

Davidson
*v.*
Murphy.

3. That if there was a judgment, the papers offered were not legal evidence. The declaration alleges that the judgment had been *lost*. There should, then, have been a copy of the judgment, properly authenticated. The town-clerk could give such copy and certify it. But there was no proof of loss, and no authentication whatever.

WILLIAMS, Ch. J. The plaintiff must claim, that the evidence offered by him was admissible, either because it is a record, or that this is a case in which record evidence may be dispensed with.

1. Is it a record ? A record, in judicial proceedings, is a precise history of the suit from its commencement to its termination, including the conclusion of law thereon, drawn up by the proper officer, for the purpose of perpetuating the exact

not be contradicted. The judgment, and all the proceedings previous to it, are carefully registered and preserved in public repositories, under the name of a *record*, in a form well known, which comprises a complete history of the cause, with the conclusion of law upon it. Now, the *memorandum* offered was no record, in form, substance or intention. It was an imperfect hint, made by the justice, for his own use, to be added to and extended by his recollection. The record of a judgment on default contains the *time* when the cause was defaulted ; but the *memorandum* offered contains no time. The record mentions the *court* and the *place;* but this *memorandum* is silent as to both. It comprises the facts constituting the default, as that the defendant was called and failed to appear ; but this *memorandum* contains no such fact. It closes with the conclusion of law, which essentially is the judgment ; but this *memorandum* has no legal conclusion. Were a justice of the peace a commissioner only, there must be some certainty in his proceedings—something that would be complete, without guessing or *subintelligitur;* but the court of a justice of the peace is a court of record, and in its records not distinguishable from any other court of record. The lamented death of Mr. *Denison* can make no difference in the case ; for *whether record or not,* is an enquiry entirely independent of the fact whether the judge is living or dead. I consider the motion as contending for a novelty unsanctioned by principle or analogy, and fraught with mischief. If it is come to this, that any imperfect *memorandum* is a record, records ought no longer to be considered as instruments of incontrovertible verity, but as the most slight and inartificial of all judicial writings. The truth is, Mr. *Denison* never intended the *memorandum* on the back of the file to be a record, any more than if he had made it in his pocket-book. It was an assistant to his memory only. If justices are generally in the loose habit of omitting to make up their records, a court of justice at least ought not, on this account, to repeal the well established law, and give a handle for such pernicious negligence. In fine, this is a case in which reasoning is out of place ; because the appeal is not to reasoning, but to common sense. *Qui nomina intelligit, res etiam intelligit.* He who knows what a record is, knows that a loose *memorandum* is not a record ; and by the same operation of mind that he knows an ox is not a horse. And this brings us to the question whether a record may be supplied, by parol evidence ; that is, a record not once existing and lost, but a record which never existed ; and this I take to be no question at all."

*New-Haven,*
*July, 1839.*

*Davidson*
*v.*
*Murphy.*

state of facts : or, in the language of Lord *Coke*, "records are memorials or remembrances, in rolls of parchment, of the proceedings and acts of a court of justice, which hath power to hold plea according to the course of the common law ;" and are of " such incontroulable credit and verity as that they admit no averment, plea or proof to the contrary ; and if such record be alleged, and it be pleaded that there is no such record, it shall be tried only by itself." *Co. Litt.* 260. a. *Wright* v. *Pinder,* cited *Hardr.* 120.

Is this such a memorial ? In *England*, it would admit of no question, because it is not enrolled in parchment ; but we have always dispensed with that in this state. Has it, then, the other requisites ? Is there given here a precise history of the facts ? The writ, &c. bring down the case to the time of trial. The minutes of the justice make it probable, that the parties appeared, as the issue is stated ; but that is a mere inference ; and if they did appear, we know not where it was, except as we are to presume it. The minutes add—" Continued 26th of *September*, 1836." Now, whether it was continued *on* that day, or *to* that day, is no where said. The natural meaning is, that without shewing at all how it was pending upon that day, it was, on that day, continued to a future time. It is said the costs—" attendance, four days"—shew, that was the day. If this is supposed to be a taxation of costs, and of four days attendance of the plaintiff, as is claimed, there is nothing to shew, that the four days intend four days before the 26th of *September*, unless we assume the fact to be proved, that the judgment was rendered on the 26th of *September*.

Again ; that any judgment was rendered, and what that judgment was, is uncertain. After the ordinary items of the bill of costs for the plaintiff, is subjoined—" Damages $5.75"— from which it is most probable, that the justice intended to, or actually did, render judgment for the plaintiff for that sum. This, however, he does not state ; and if he did, there is nothing to shew, whether he found the issue for the plaintiff or defendant. In short, every thing shews, that so far from being a memorial of such incontroulable credit and verity as to admit no averment to the contrary, it continually needs averments to support it. It appears to be a mere *memorandum* or minutes of the magistrate, kept to assist him in making up his record. Such minutes are recognized in law, as something distinct

New-Haven,
July, 1839.

Davidson
v.
Murphy.

from the record. Thus, it is said, that before exemplifications are made, the record shall be drawn up in form ; and although execution may be taken out, yet it is not a permanent and perfect record, until brought into court, and there filed as a *memorandum* or roll. *Peake's Ev.* 33. And the minutes of the house of commons are admissible, because it is not a court of record. *Jones* v. *Randall, Cowp.* 17. So too, when a record has been lost, a new record has been allowed to be made from minutes of a proper officer made at the trial.

But with these minutes, the plaintiff also offers an execution, signed by the justice, and counting upon the judgment declared upon. That an execution is not a record of the judgment, is too apparent to require illustration. It is a well known principle, that although an execution, regular upon its face, may protect an officer acting under it, yet the party must produce, for his protection, the judgment upon which it is founded. *Colt* v. *Eves,* 12 *Conn. Rep.* 357, 8. And the execution upon its face refers to the judgment upon which it is founded, " *as appears of record;*" and so far as it is evidence at all, it only proves that there is other evidence of a higher nature. Neither the minutes of the justice, nor the execution signed by him, nor both, constitute a record. In this case, then, the plaintiff has offered no record proof of the judgment.

2. Is the evidence offered a substitute for it? Our justice courts are courts of record ; and the presumption of law is, that if they have rendered a judgment, there is to be found the legal evidence of that judgment, *viz.* the record. In this case, we not only have that presumption, but the plaintiff in his declaration alleges the record of said judgment to be lost. And whatever doubts may have existed in former days, and however judges may have hesitated, yet it is now well settled, that if a record has existed and has been destroyed, much inferior evidence of its contents may be admitted. *Aleyn* 18. *Peake's Ev.* 29. 1 *Stark. Ev.* 160. *Knight* v. *Dauler, Hardr.* 323. *Stockbridge* v. *West-Stockbridge,* 12 *Mass. Rep.* 400. 402. But then there must be sufficient evidence of the *loss.* In this case, no evidence at all was offered to prove the loss. This evidence then was offered instead of the record, while so far as there is any evidence before us, the record might have been shewn ; and this would be a sufficient answer to the claim of the plaintiff, as disclosed in these pleadings.

But the case has been argued before us, in accordance pro- bably with the fact that Justice *Bennett* never made a record ; for his death could not have been introduced for any other purpose ; and this court is called upon to say, that because it has become impossible for the plaintiff to get the legal evidence of the fact, therefore we are to allow him to prove it, by other evidence ; and in support of their position, they cite the case of *Strong* v. *Kimball,* 6 *Verm. Rep.* 541. to which is opposed the strong opinion of Judge *Hosmer,* in the superior court in *New-Haven* county in 1825, where he held the question too clear for argument, and refused to reserve it for the supreme court, as it admitted of no doubt.  *Wales,* admr. v. *Smith.* Such we believe to have been the uniform course of decisions in this state.   In the case said to have been decided by Judge *Huntington,* in this county, in 1838, the facts were all stated in a bill of exceptions, and thus became a part of the record. A judgment debt is a debt of record ; and as such, is protected from examination, on account of its nature and character. But this case proceeds upon the principle that there never was any record evidence of this judgment.   And the rule, as laid down by one of our most able jurists, is, that when it is neces- sary a record should be made to constitute a fact, then it must appear that such record was made, *as in cases of judgments of courts,* or such fact does not exist.   *Swift's Ev.* 5.

It is said a man shall not suffer by the act of God.   As the justice lived nearly a year after this judgment, it would seem as if the loss was occasioned rather by the negligence of man, than the act of God.   But had he died on the day of the judg- ment, the same principle must have governed ; " for the law will rather suffer a mischief in a private case, than an incon- venience, which, by the breaking of the rule of law, should be brought upon the public."   *Leyfield's* case, 10 *Co.* 93.

We have no hesitation in saying, there is nothing erroneous in the judgment complained of.

In this opinion the other Judges concurred.

Judgment affirmed.